# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LISA LEWIS**, <br><br> Plaintiff, <br><br> v. <br><br> **STEVEN T. MNUCHIN, in his official capacity as U.S. Secretary of the Treasury**, <br><br> Defendant. | Case No. 1:16-cv-02437 (TNM) |

## MEMORANDUM OPINION

Lisa Lewis works at the U.S. Department of the Treasury. In 2011, she and another Treasury employee, Evin Gossin, applied for a promotion. He was selected; she was not. Ms. Lewis now brings this case against Steven Mnuchin in his official capacity as Secretary of the Treasury, alleging that the Department's decision to promote Mr. Gossin and not her was based on unlawful race and gender discrimination. The Court disagrees, finding that Mr. Gossin was chosen because of his performance evaluations, qualifications, and superior application scores. Because there are no genuine issues of material fact, and because he is entitled to judgment as a matter of law, the Court will grant Secretary Mnuchin summary judgment.

## I.

Beginning in 2002, Ms. Lewis worked as a Personnel Security Technician in the Office of the Comptroller of the Currency. Second Am. Compl. 2. She "performed her duties in a satisfactory manner and received satisfactory performance evaluations." *Id.* at 3. Her direct supervisor was Ron Shelden, a Caucasian man. *Id.* She is African American.

Mr. Shelden evaluated Ms. Lewis's performance annually. These evaluations consisted of numerical ratings of six "Skill Elements," an overall summary score, and narrative comments. *See* Def.'s Ex. 10, ECF No. 23-1 at 80-82. The Skill Elements assessed, among other things, an employee's teamwork, administrative knowledge, and organizational, technical, and communication skills. *Id*. Each Element was assigned a rating ranging from one to four points, with four being the best possible score. Overall performance was also rated on the four-point scale. *Id*.

In Fiscal Year 2010, Mr. Shelden assigned Ms. Lewis an overall score of three. *Id*. at 81. She also received a score of three for each of the Skill Elements. *Id*. In his narrative remarks, Mr. Shelden noted that Ms. Lewis "consistently demonstrated professionalism and established effective working relationships with management, employees, peers, and external customers . . . ." *Id*. at 82. He added that she "made solid contribution[s]" to the team, and he praised her for "exhibit[ing] significant growth during this appraisal period." *Id*.

In Fiscal Year 2011, Mr. Shelden again assigned a rating of three to Ms. Lewis's overall performance. *See* Def.'s Ex. 3, ECF No. 23-1 at 31.[1] She scored a three on five of the Skill Elements. Def.'s Ex. 12, ECF No. 23-1 at 104. For the sixth element, Communications and Interpersonal Skills, she received the maximum score of four. Mr. Shelden described the year as "very challenging" for the Office. *Id*. at 105. He stated that Ms. Lewis "met the many challenges this year presented" and "perform[ed] her job in a productive manner . . . ." *Id*. Another reviewer, Ron Bell, complimented her "pleasant and effective customer satisfaction skills," and described her as "conscientious in her work." *Id*.

---

[1] Though Ms. Lewis's performance evaluation for FY 2011 did not list her Summary Rating, Mr. Shelden testified that he assigned her overall performance a score of three. Ms. Lewis does not contest this testimony.

Mr. Gossin, a Caucasian male, was also a Security Technician supervised by Mr. Shelden. Second Am. Compl. 3. Like Ms. Lewis, in Fiscal Year 2010, Mr. Gossin received an overall performance score of three. Def.'s Ex. 11, ECF No. 23-1 at 92. But unlike her, on all but two of the Skill Elements, he received the maximum score of four. *Id*. In his narrative comments, Mr. Shelden wrote that Mr. Gossin "continues to distinguish himself as an integral part" of the team, adding that his "skill sets and initiative are invaluable." *Id*. at 94. He also described Mr. Gossin as "an outstanding contributing member" of the office. *Id*.

For Fiscal Year 2011, Mr. Gossin received an overall performance score of four. Def.'s Ex. 13, ECF No. 23-1 at 117. He also received fours on five out of the six Skill Elements. *Id*. Mr. Shelden noted that Mr. Gossin was "instrumental" to the team's success during a difficult year, and that he "perform[ed] his job in a highly efficient and effective manner." *Id*. at 118. Mr. Bell added that Mr. Gossin was a "self-starter, quick study, and [was] always ready to volunteer to take on additional tasks, particularly in an effort to learn a new skill or new program." *Id*.

Mr. Gossin's performance led Roger Mahach, Mr. Shelden's supervisor, to explore the possibility of promoting him. Mr. Mahach asked the human resources department ("HR") to "conduct a desk audit of Mr. Gossin," who he believed "was doing work that was above his NB-IV [pay] grade." Def.'s Ex. 2, ECF No. 23-1 at 14. Noting that there were multiple employees with Mr. Gossin's job title and pay grade, HR recommended that "we should announce the position to give all a fair chance for promotion." *Id*.

That position—Security Specialist with a higher NB-V pay grade—was then publicly announced. *See* Def.'s Ex. 14, ECF No. 23-1 at 129. Both Ms. Lewis and Mr. Gossin applied. HR certified that both candidates were "highly qualified" and sent their applications to Mr.

3

Mahach, the office's designated "selecting official." Pl.'s Ex. B, ECF. No. 26-1 at 35-36. Because there were fewer than ten qualified applicants for the position, HR told Mr. Mahach that he had three selection options: HR could rank the applicants, Subject Matter Experts (SMEs) could rank the applicants, or Mr. Mahach could conduct interviews himself. *Id*. at 36. He chose the second option. *Id*.

So two SMEs, Mr. Shelden and D'Mona Boykin, participated in an application ranking panel. *Id*. Ms. Boykin, an African-American female, was an IT Specialist in the Security and Compliance Services unit. Def.'s Ex. 8, ECF No. 23-1 at 70. She and Mr. Shelden evaluated the candidates' resumes and their knowledge, skills, and abilities ("KSAs"). *Id*. at 71. These materials were evaluated using assessment questions drawn from the job announcement. *Id*.

Ms. Boykin awarded Ms. Lewis's application a score of 12 out of 18. *Id*. She awarded Mr. Gossin's application the maximum possible score of 18. *Id*. at 72. One factor that "weighed heavily" in his favor, she explained, was his training in Lean Six Sigma, a process improvement methodology. *Id*. While Mr. Gossin was "working on his black belt," Ms. Lewis had not yet been awarded the lower "green belt" certification. *Id*. Ms. Boykin also noted that Mr. Gossin's resume "identified a number of accomplishments that he had achieved in his tenure with [the office] and elsewhere." *Id*. He "provided examples as to how he accomplished" these achievements. *Id*. By contrast, Ms. Lewis "said that she did some things, but did not explain how she accomplished them." *Id*.

Mr. Shelden also ranked Mr. Gossin higher. He awarded Ms. Lewis's application a score of ten and Mr. Gossin's a score of 18. Def.'s Ex. 9, ECF No. 23-1 at 76. He noted that Mr. Gossin "[s]howed evidence of fully meeting the requirements of each assessment question." *Id*. Ms. Lewis, however, "showed no evidence of emergency management program or information

4

security program experience." *Id*. He also highlighted her lack of a Lean Six Sigma "Greenbelt or Blackbelt certification." *Id*. Finally, he noted that she had not conducted any "highly controversial personnel security adjudications." *Id*.

Based on the "wide difference" in the two applicant's scores, HR certified Mr. Gossin as the "Best Qualified" candidate and sent this information to Mr. Mahach. Pl.'s Ex. B, ECF No. 26-1 at 36. Mr. Mahach stated that he did not conduct any interviews or select anyone else for the position because "only one name was referred to [him] by HR and that was . . . Evin Gossin." Def.'s Ex. 2, ECF No. 23-1 at 12-13.

Shortly after being told that she did not receive a promotion, Ms. Lewis filed a complaint alleging race- and sex-based discrimination with the Equal Employment Opportunity Commission. Second Am. Compl. 1. The Commission ruled against her and denied her request for reconsideration. *Id*. at 2. She then brought this case after exhausting the administrative remedies available to her.[2]

Despite the SMEs' unanimous conclusion that Mr. Gossin was the stronger applicant for the promotion and two years of superior performance reviews in his favor, Ms. Lewis believes his selection is attributable to invidious discrimination. She claims that her supervisors "groomed" Mr. Gossin for the promotion, preferring him because of his race and sex in violation of Title VII of the Civil Rights Act. Second Am. Compl. 10, 11. She contends that while he was given permission to receive Lean Six Sigma training, she was denied it. *Id*. at 10. She also suggests that Mr. Gossin was given "more face time with management" and "extra adjudication assignments." *Id*. Finally, she alleges that Mr. Mahach "asked Mr. Gossin for a list of his

---

[2] The Court has federal question jurisdiction to consider the merits of this case pursuant to 28 U.S.C. § 1331.

5

training and experience so [he] could tailor the qualifications" in the job posting to ensure that Mr. Gossin would be selected. *Id.* at 11.

Secretary Mnuchin concedes that Mr. Mahach sought to promote Mr. Gossin. *See* Def.'s Statement of Undisputed Material Facts, ECF No. 23 at 3. But he did so, the Secretary argues, because of Mr. Gossin's "superior qualifications and performance of duties." Def.'s Mot. for Summ. J., ECF No. 23 at 11 ("Def.'s Mot."). The Secretary thus urges the Court to conclude that this was a "legitimate, non-discriminatory reason" for not selecting Ms. Lewis. *Id.*

## II.

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A factual dispute is material if it could alter the outcome of the suit under the substantive governing law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant makes this showing, the non-moving party bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

When ruling on a motion for summary judgment, a court must consider all facts and inferences in the light most favorable to the non-moving party. *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006).

## III.

Before considering the merits of Ms. Lewis's claims, a preliminary matter warrants brief discussion. Secretary Mnuchin suggests that "because the Plaintiff's 'Statement of Facts' does not comply with Local Civil Rule 7(h), the Court should assume that the facts identified in Defendant's [Statement of Undisputed Material Facts] are admitted . . . ." Def.'s Reply to Pl.'s Opp. 3, ECF No. 27 ("Def.'s Rep.").

Local Rule 7(h) requires a party opposing a motion for summary judgment to submit a statement enumerating all material facts the party contends are genuinely disputed and thus require trial. *See* LCvR 7(h); *see also* Court's Standing Order 6, ECF No. 20. This Rule "assists the district court to maintain docket control and to decide motions for summary judgment efficiently and effectively." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996). A court may strike the non-movant's statement for failure to comply with the Rule. *Id*. at 154.

Here, Ms. Lewis's Statement of Facts does not explicitly admit or deny the material facts identified by the Secretary. *See* Pl.'s Opp. to Def.'s Mot. for Summ. J. 2-14, ECF No. 26 ("Pl.'s Opp."). Instead, it is "[r]eplete with factual allegations not material to [Ms. Lewis's] substantive claims," and it "repeatedly blend[s] factual assertions with legal argument." *Jackson*, 101 F.3d at 153. Treating Ms. Lewis's Statement as compliant would "undermine the purposes of the rule by improperly placing the burden on the [C]ourt, rather than on the opposing party or his counsel, to winnow the wheat from the chaff." *Id*. (cleaned up). Thus, to the extent that her

7

Statement does not explicitly deny or controvert a material fact contained within the Secretary's Statement, the Court will treat that fact as conceded.  *See id.* at 154.

## IV.

Turning to the substance of the parties' arguments, the Court finds that the Secretary has proffered a legitimate, nondiscriminatory reason for the decision not to promote Ms. Lewis.  And she has failed to produce evidence that would allow a reasonable jury to conclude that this reason was merely pretextual.  So the Court concludes that the Secretary is entitled to summary judgment.

Title VII of the Civil Rights Act makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Title VII discrimination claims are evaluated under the *McDonnell Douglas* framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  This framework requires a plaintiff to establish a prima facie case of discrimination.  *Id*. at 802.  Once this showing is made, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action.  *Id*.  If the employer meets that burden, the plaintiff must then show that the employer's proffered reason was merely pretextual.  *Id*. at 804.

But, at the summary judgment stage, when "an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not-*and should not*-decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original).  Rather, it need only "resolve one central question: Has the employee produced sufficient evidence for a

reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id*.

Ms. Lewis has suffered an adverse employment action—she was not promoted. And her employer has asserted a legitimate, nondiscriminatory reason for the decision. The Department contends that "the eventual selectee had superior qualifications and his performance of his duties was exemplary, superior to that of the Plaintiff." Def.'s Mot. at 7. Many facts support this assertion. Mr. Gossin received a higher overall performance score in 2011 and received higher Skill Element scores in both 2010 and 2011. *See* Def.'s Ex. 10-13. His application for promotion also received higher scores from both ranking panel members. *See* Def.'s Ex. 8, 9. Thus, the only question to be resolved is whether a reasonable jury could "nonetheless find discriminatory animus." *Paulk v. Architect of the Capitol*, 79 F. Supp. 3d 82, 87 (D.D.C. 2015). A reasonable jury could make no such finding.

Ms. Lewis offers several allegations in support of her contention that the decision to promote Mr. Gossin was in fact discriminatory. She claims, for example, that the Secretary "relie[d] on subjective evaluations and comparisons of Ms. Lewis's work performance with that of Mr. Gossin," and that "[g]iving Mr. Gossin a higher subjective evaluation fits the stereotype of white males needing to advance in their careers at the expense of black females." Pl.'s Opp. at 3. She contends that "[a]fter Mr. Gossin joined the staff, management assigned adjudications exclusively to [him]," thereby depriving Ms. Lewis of opportunities to gain necessary experience. *Id*. at 5. She also claims that her supervisors offered Mr. Gossin Lean Six Sigma training but never offered this training to her. *Id*. Finally, she suggests that "Mr. Mahach spent more face time with Mr. Gossin than he did with her," and that management was "grooming"

9

Mr. Gossin to move up in the organization. *Id*. at 6. Other employees, she argues, received no such grooming. *Id*.

These arguments are unavailing. The record shows that the evaluations of Mr. Gossin and Ms. Lewis were objective. Two reviewers participated in the ranking panel—a Caucasian male and an African-American female. Both thought that Mr. Gossin was better qualified. *See* Def.'s Ex. 8, ECF No. 23-1 at 71-72; Def.'s Ex. 9, ECF No. 23-1 at 76. They arrived at this conclusion after scoring each applicant across several KSAs. And they also considered each applicant's annual performance reviews, which again featured a blend of quantitative and qualitative assessments. *See* Def.'s Ex. 10-13.

Moreover, even if the reviewers relied on subjective criteria, Ms. Lewis fails to present any evidence that her race or gender motivated their decisionmaking. Nothing in record suggests that Ms. Boykin preferred or was instructed to prefer Mr. Gossin because he was a white male. *See, e.g.*, Def.'s Ex. 8 at 73 (Ms. Boykin's uncontroverted sworn declaration that neither race nor gender factored into her treatment of the applicants). Instead, Ms. Lewis tries to discredit Ms. Boykin's evaluation by suggesting that she "is not a subject matter expert in the work of the security specialists at [Ms. Lewis's office]." Second Am. Compl. at 9. But Ms. Boykin has "worked in the security arena for more than 10 years," was familiar with the work of Ms. Lewis's office, and had experience reviewing similar applications and vacancy announcements. Def.'s Ex. 8, ECF No. 23-1 at 71.

Similarly, nothing in the record suggests that Mr. Shelden's evaluations were based on racial or gender-based animus. Indeed, in his reviews of Ms. Lewis's performance, he spoke highly of her "solid contributions," "significant growth," and productivity. *See* Def.'s Ex. 10,

10

12. In scoring her application for a promotion, Mr. Shelden noted only that she lacked some of the experience and training that Mr. Gossin's application showed. Def.'s Ex. 9.

More broadly, Ms. Lewis suggests that the "Defendant's normal practice for selections is to let the manager just select a candidate when there are ten (10) or fewer candidates rated as qualified." Pl.'s Opp. at 11. The office, she says, "normally does not use subject matter experts." *Id*. It was only after she was rated "as one of the best qualified" applicants that "management elected to have SMEs conduct a new rating." *Id*.

But this deviation from the office's routine practice was laudable, not suspicious. Indeed, as Ms. Lewis herself notes, Mr. Mahach testified that the process chosen "may result in identification of one applicant as being clearly better qualified than any other, making the selection unbiased and defensible." *Id*. (citing the deposition testimony of Mr. Mahach). Mr. Mahach could have promoted Mr. Gossin unilaterally, but he surrendered his prerogative to a neutral gender- and racially-mixed panel. Ms. Lewis seeks, in effect, to portray Mr. Mahach's efforts to rid the review process of the appearance of any bias as an indication of his supposed bias.

This argument lacks merit. Had Mr. Mahach simply chosen Mr. Gossin despite the existence of another qualified candidate, he would face many of the same claims Ms. Lewis now brings. Seeking to ensure that a promotion decision is free from bias or the appearance thereof cannot fairly be treated as evidence of that bias. This is particularly true when, as here, there is no evidence of bad faith, ulterior motive, or pretext. In short, the record would not permit a reasonable jury to find that the process used to evaluate Mr. Gossin and Ms. Lewis was discriminatory.

Ms. Lewis's contention that she was deprived of vital experiences and face time with management because of her race and gender fares no better. She admits, for instance, that the "higher scores that [Mr. Gossin] received" in his annual performance evaluations "might have made a difference in the amount of . . . face time with management and types of assignments that Mr. Gossin was given." Def.'s Ex. 3, ECF No. 23-1 at 30. She further admits that, while her office has a system to appeal performance evaluations, she did not appeal either her FY 2010 or FY 2011 scores. *Id*. at 31-32. She also acknowledges that it was reasonable for her supervisors to treat a "better performing employee" differently. *Id*. at 21. And she offers only unsubstantiated allegations to support her contention that Mr. Gossin was given preferential treatment *because* he is a white male. *See, e.g.*, id. at 24-25 (describing her supervisors as "good old boys . . . a group of white men who stick together and who want to advance one another). This is not enough. *See Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 507 F. Supp. 2d 93, 110 (D.D.C. 2007) ("[T]he plaintiff has provided no evidence at all that [the decision] was motivated by his employer's discriminatory intent, and that is the question that the Court must answer.").

Ms. Lewis also attributes considerable significance to the Lean Six Sigma training she alleges her supervisors denied her. She contends that, other than Mr. Gossin, neither she nor "any other employees" in the office were offered the opportunity to earn a Lean Six Sigma "Green Belt" certification. Pl.'s Opp. at 5. But during a deposition, she acknowledged that requests for training in her office were made through the "TLMS system," and that she never "fill[ed] out a TLMS form requesting Greenbelt training." Def.'s Ex. 3, ECF No. 23-1 at 40. She also acknowledged that Juan Mestre, a Latino male, participated in a Green Belt training program in 2012. *Id*. at 41-42.

Ms. Lewis suggests that she did not formally request this training because "we were told there only could be one and that person had already been chosen." *Id*. She adds that management restricted access to the trainings because of "budget cuts." Pl.'s Opp. at 6. And she claims that, by the time Mr. Mestre's training request was approved, her office was under new management. Def.'s Ex. 3, ECF No. 23-1 at 42.

Taking all these explanations as true, Ms. Lewis still fails to demonstrate that she was denied access to the trainings she sought *because of her race or gender*. Nothing in the record, for instance, permits an inference that her employers used budget cuts and restraints as a pretext for discrimination. And employers are, of course, free to allocate limited resources in the manner that they deem appropriate, so long as this allocation is not discriminatory. No reasonable jury could conclude that management's decisions about training constituted racial or sex-based animus.

Finally, Ms. Lewis contends that Mr. Gossin was "groomed" for a promotion, that the new job was created for him, and that the vacancy announcement was tailored to match his skills and experiences. Pl.'s Opp. at 6, 8-10. Perhaps. But there is nothing improper with a supervisor identifying and rewarding a superior employee. And even if these decisions were improvident or unfair to Ms. Lewis given her long tenure at Treasury, they are not, without more, legally actionable.

Title VII "does not authorize a court to become a super-personnel department that reexamines an entity's business decisions." *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999). And "charges of unfairness, no matter how well-founded, do not by themselves prove unlawful discrimination." *Paulk*, 79 F. Supp. 3d at 87. Put simply, Ms. Lewis does not rebut the Secretary's evidence that any decisions to accelerate Mr. Gossin's career rather than hers were

13

taken because Mr. Gossin is a high-achieving employee rather than a white male. Her claims thus fail.

## V.

For these reasons, the Defendant's Motion for Summary Judgment will be granted. A separate order will issue.

Dated: January 7, 2019                          TREVOR N. McFADDEN, U.S.D.J.